UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AKOBI SCHUSTER,

                              Plaintiff,

        -v-

CHARTER COMMUNICATIONS, INC.

                              Defendant.

No. 18-cv-1826 (RJS)
<u>OPINION & ORDER</u>

<u>RICHARD J. SULLIVAN</u>, Circuit Judge:

        In February 2018, Plaintiff Akobi Schuster commenced this action against his former employer, Charter Communications, Inc. ("Charter"), alleging that Charter discriminated against him based on his disability in violation of federal, state, and city law.  (*See* Doc. No. 1 ("Compl.").)  During the course of discovery, Schuster failed to attend his deposition, failed to attend a conference (thereby violating the Court's orders), and refused to comply with the Court's orders directing him to explain his absences.  Now before the Court is Charter's motion for sanctions against Schuster.  (Doc. No. 28.)  Specifically, Charter seeks (i) dismissal of the present action with prejudice, (ii) monetary sanctions, and (iii) imposition of a filing injunction against Schuster.  For the reasons stated below, Charter's requests for dismissal and for a filing injunction are GRANTED, and Charter's request for monetary sanctions is DENIED.

## I. Background

### A.    Schuster's Employment with Charter and Prior Litigation

        Schuster's legal actions, including the claims presently before the Court, all stem from an injury that Schuster alleges he suffered on December 6, 2016 while working as a cable technician

for Charter.[1]  (*See* Compl. ¶¶ 15–19; Doc. No. 29 ("Margolis Decl.") ¶ 14.)  Schuster alleged that

the cable box he sought to install malfunctioned, "emitting a loud noise and an immense amount

of smoke and spewing a liquid into [his] right eye."  (Compl. ¶ 17.)  Schuster was initially cleared

to return to work by his doctor on December 10, 2016, but Charter eventually placed him on leave

after Schuster allegedly experienced anxiety attacks that prevented him from completing

installations involving the same cable box he claimed had malfunctioned.  (Compl. ¶¶ 53, 101;

Margolis Decl. ¶ 16.)  Charter informed Schuster that he could not return to his job until he

presented additional medical documentation clearing him to do so, and Charter provided Schuster

with information to allow him to apply for worker's compensation benefits.[2]  (Margolis Decl.

¶ 16.)  Schuster applied for worker's compensation, but following a hearing on April 25, 2017, the

Worker's Compensation Board denied Schuster's claim.  (*Id.*, Ex. F.)  On June 8, 2017, Charter

informed Schuster that he was designated as a striking worker but could still return to work if he

provided medical documentation clearing him to come back.  (*Id.*)  Schuster never returned to

work.  (*Id.* ¶ 19.)

In addition to his request for worker's compensation, Schuster filed two claims with the

U.S. Occupational Safety & Health Administration ("OSHA").  The first, filed on December 19,

2016, alleged that Charter maintained an unsafe workplace condition; the second, filed on March

8, 2017, alleged that Charter retaliated against him by prohibiting him from returning to work after

he filed his December 19 OSHA claim.  (*Id.* ¶¶ 20–21 (citing Exs. G, I).)  Both claims were

dismissed, and OSHA rejected Schuster's appeal of the latter decision.  (*Id.* ¶¶ 20, 22–23 (citing

[1] The following facts are drawn from Schuster's complaint and the parties' submissions in connection with Charter's
motion for sanctions.

[2] In his complaint, Schuster alleged that no one "from Charter [told him] that he was placed on a medical leave of
absence, nor did Charter ever give [him] the documents required to go on a leave of absence," but instead told him
that he "could not return to work and had to go on worker['s] compensation."  (Compl. ¶¶ 105, 114.)

Exs. H, K, L).)  After these denials, Schuster filed a complaint with the Labor Bureau of the New York Attorney General's Office on May 9, 2017 (and an amended complaint on August 7, 2017), claiming that he "had not been paid wages[ or] supplemental income" and that he had "experienced harassment" from his employer following his OSHA workplace hazard claim.  (*Id.* ¶ 24 (citing Exs. M, N).)  The Labor Bureau did not issue a finding regarding Schuster's complaint, however, and did not award Schuster any relief.  (*Id.*)

Undaunted, Schuster filed three separate actions in New York Supreme Court against (i) Charter, (ii) Charter's counsel, and (iii) OSHA and the OSHA officials who denied his prior claims.  (*Id.* ¶¶ 25–27 (citing Exs. O, Q, T).)  All three actions were dismissed.  (*Id.* (citing Exs. P, R, U).)  Schuster also filed a complaint against Charter's counsel with the Disciplinary Committee of the New York Appellate Division, First Judicial Department, which was dismissed on November 16, 2017.  (*Id.* ¶ 26 (citing Ex. S).)

The very next day, November 17, 2017, Schuster filed a Charge of Discrimination against Charter with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging that Charter had violated the Americans with Disabilities Act ("ADA").  (*Id.* ¶ 28 (citing Ex. V).)  After determining that it could not substantiate Schuster's claim, the EEOC dismissed the charge on November 30, 2017.  (*Id.* ¶ 28 (citing Ex. W).)  On December 7, 2017, Schuster filed a Complaint of Discrimination against Charter with the New York State Division of Human Rights, alleging violations of the New York State Human Rights Law.  (*Id.* ¶ 29 (citing Exhibit X).)  But after Charter filed its answer, Schuster voluntarily dismissed his complaint.  (*Id.*)

**B.    The Present Action and Schuster's Deposition**

Notwithstanding his prior efforts, Schuster filed his complaint with this Court on February 28, 2018, through counsel Walker G. Harman, Jr. and Edgar M. Rivera of The Harman Firm.  (*See*

Compl.)  Schuster alleged in his complaint that Charter violated the ADA, 42 U.S.C. § 12101 *et seq*., and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*., because Charter (i) subjected him to a hostile work environment, (ii) failed to reasonably accommodate his disability, and (iii) wrongfully terminated his employment.  (Compl. ¶ 1.)  Charter answered Schuster's complaint on April 5, 2018 through counsel, Kenneth A. Margolis of Kauff McGuire & Margolis LLP, and the parties moved to discovery.  (*See* Doc. No. 7.)

During discovery, Charter sought to depose Schuster.  (Doc. 28 ("Charter Br.") at 2.)  This deposition was initially scheduled for July 25, 2018 at the offices of Kauff McGuire & Margolis LLP, but was adjourned to August 30, 2018 by mutual agreement.  (Margolis Decl. ¶ 4 (citing Exs. A, B).)  On August 22, 2018, The Harman Firm sent an email to Schuster confirming that his "deposition [was] scheduled for Thursday, August 30, 2018, at 9:00 a.m."  (Doc. No. 37, Ex. A (emphasis omitted).)  On August 28, 2018, Schuster met with his counsel to prepare for the upcoming deposition, at which time Schuster's counsel again reminded Schuster of the time and place of the deposition.  (*Id.* at 1.)  The next day, on August 29, Schuster's counsel sent an email to Schuster confirming that the deposition would proceed as planned.  (*Id.*, Ex. B.)  But at 8:30 p.m. the night before the deposition, Schuster advised his counsel for the first time that he did not have "enough notice" and that "[t]his deposition need[ed] to be rescheduled."  (*Id.*, Ex. D.)  The morning of August 30, Schuster's counsel emailed Schuster to explain that he had "told [Schuster] when and where the deposition would be when [they] met on Tuesday, [August 28,]" and that Schuster "knew it was at [Charter's counsel's] office at 10am today."  (*Id.*, Ex. C.)  Nonetheless, Schuster did not appear for the deposition.  (Doc. No. 17 ¶ 4.)

**C.      Motion to Withdraw and Motion for Sanctions**

In response to Schuster's unexplained absence, The Harman Firm moved to withdraw as Schuster's counsel on August 30, 2018 on the ground that Schuster "ha[d] failed or otherwise refused to cooperate with the Firm," citing Schuster's absence at the deposition despite counsel's efforts in preparing him for the deposition.  (Doc. No. 16 at 1 (citing Doc. No. 17 ¶¶ 3–4).)  On September 4, 2018, the Court issued an order directing counsel and Schuster to appear for a conference on September 12, at which the Court would address counsel's motion to withdraw. (Doc. No. 18 at 1.)  Schuster's counsel submitted a declaration affirming that the motion to withdraw and the Court's September 4 order had been served on Schuster via email.  (Doc. No. 23 ¶¶ 3, 6.)  Although Schuster confirmed receipt of the email attaching The Harman Firm's motion to withdraw on August 31, 2018, he did not respond to the email attaching the Court's September 4, 2018 order.  (*Id.* ¶¶ 3, 6 (citing Exs. 1, 3).)  Schuster's counsel was unable to effect service on Schuster via a process server despite making at least five attempts to do so at Schuster's only known address.  (*Id.* ¶ 5.)

On September 7, 2018, Charter submitted a pre-motion letter indicating that it took no position on The Harman Firm's motion to withdraw, but that Charter intended to file a motion for sanctions "pursuant to Fed. R. Civ. P. 37 by reason of Schuster's refusal to engage in discovery – in particular, his refusal to submit to a deposition."  (Doc. No. 22 at 1.)  In the letter, Charter indicated that it would seek dismissal of Schuster's claim or, in the alternative, "monetary sanctions – including the expense of the court reporter, videographer, and Charter's additional attorney's fees in preparing for a second deposition" if such a deposition were to take place.  (*Id.* at 5.)  On September 10, 2018, the Court issued a second order, which again directed Schuster to attend the September 12 conference so that the Court could address Charter's motion for sanctions

and The Harmon Firm's motion to withdraw; the Court also directed Schuster's counsel to send Schuster a copy of Charter's pre-motion letter and the September 10 order to Schuster via email. (Doc. No. 24 at 2.)  Schuster's counsel again affirmed that Schuster had been served with this order via email, that Schuster failed to respond, and that service via FedEx delivery had been unsuccessful.  (Doc. No. 26 ("Conf. Tr.") at 3–4.)

Despite delivery of the Court's orders to Schuster via email and Schuster's confirmation that he received The Harman Firm's motion to withdraw, Schuster did not appear for the September 12 conference.  (*Id.* at 3.)  At that conference, the Court noted that Schuster appeared to be violating the Court's orders willfully, considering the unsuccessful efforts to notify him.  (*Id.* at 6.)  Nonetheless, the Court was mindful that it was possible Schuster had not been adequately notified that dismissal with prejudice could be imposed against him.  (*Id.* at 7–8.)  Accordingly, on September 17, 2018, the Court issued an order (the "Show Cause Order") (i) granting The Harman Firm's motion to withdraw as Schuster's counsel; (ii) ordering Schuster to show cause by October 8, 2018 why sanctions should not be imposed; (iii) warning that the potential sanctions included monetary sanctions, dismissal of Schuster's case, and a filing injunction; and (iv) directing the Clerk of Court to mail a copy of the order to Schuster.  (Show Cause Order (Doc. No. 25) at 2.)

Schuster failed to correspond with the Court by the deadline imposed by the Show Cause Order, and so Charter filed a memorandum of law in support of its request for sanctions on October 15, 2018.  (*See* Charter Br.)  Charter sought dismissal of Schuster's complaint with prejudice pursuant to Federal Rule of Civil Procedure 37, as well as the expenses incurred as a result of Schuster's non-appearance for his deposition ($569.50), attorney's fees incurred for the preparation for that deposition ($21,853.95), and attorney's fees incurred for appearing at the

deposition and September 12, 2018 conference ($1,846.75).  (Margolis Decl. ¶¶ 10–12.)  Charter also sought a filing injunction barring Schuster from initiating any new actions "concerning (1) his employment with Charter; (2) his pursuit of any remedies from Charter; and (3) Charter's defense of Plaintiff's claims (including any allegations of professional misconduct)."  (Charter Br. at 11.)  Charter's counsel affirmed that they served Schuster with Charter's memorandum of law and accompanying declaration via mail and email.  (Doc. No. 30.)

On November 19, 2018 – apparently having received the Court's Show Cause Order (or at least Charter's memorandum of law) – Schuster submitted a letter to the Court seeking an extension of time in which to file his response to the Show Cause Order.  (Doc. No. 31 at 1.)  Schuster claimed that his absence at both the August 30 deposition and the September 12 conference was a result of his homelessness, which spanned from mid-August to mid-September 2018 and had since ended.  (Id.)[3]  Schuster elaborated that his former counsel was aware of his living situation but had not advised Schuster to seek an extension or communicated Schuster's circumstances to opposing counsel or the Court.  (Id.)

Charter opposed the extension in a November 21, 2018 letter to the Court, pointing out that, despite Schuster's claim of homelessness, he did not assert that he was unaware or without notice of the Court's orders.  (Doc. No. 33 at 1.)  Charter further argued that, in light of Schuster's representations, Schuster's former counsel had "engag[ed] in a significant misrepresentation to the Court by failing to disclose these facts."  (Id. at 2.)

Schuster replied to Charter's opposition in a November 29, 2018 letter, in which he sought to "clarify some very vital points concerning this case."  (Doc. No. 34 at 1.)  First, he claimed that

---

[3] Along with this letter, Schuster submitted a Notice of Change of Address form indicating that he now resided at an address that the Court later learned was the apartment of Rodney Billings.  (See Doc. No. 32; Doc. No. 47 at 2.)  In a sworn letter submitted to the Court, Billings affirmed that he had allowed Schuster to move in with him "after finding out [Schuster] was homeless."  (Doc. No. 47 at 2.)

his former counsel did not inform him of the time or location of the August 30, 2018 deposition until the evening of August 29, 2018. (*Id.*) Second, he reiterated his contention that his former counsel was aware of his homelessness and that "the late notice was inconvenient and because I was homeless [the deposition] needed to be rescheduled." (*Id.*) Third, Schuster alleged that his former counsel "withdrew from the case under false pretense." (*Id.*) Schuster contended that his former counsel, Edgar Rivera, and Charter's counsel, Kenneth Margolis, "were close friends," and that "Rivera's girlfriend, a writer, was writing an article" about Margolis. (*Id.*) Schuster therefore requested that Kauff McGuire & Margolis LLP be disqualified from representing Charter for "possible violation of ethics" and that Schuster be "given a month and a half to retain an attorney that can represent [him] moving forward." (*Id.* at 2–3.) Finally, Schuster reiterated certain of his allegations against Charter and requested that the Court "award [him] the damages as requested." (*Id.* at 3.)

On November 30, 2018, the Court issued an order that extended Schuster's deadline to file a response to the sanctions motion to December 10, 2018, on account of Schuster's apparent homelessness from mid-August to mid-September. (Doc. No. 36 at 1.) The order further directed that, "in addition to explaining why he should not be sanctioned for violating the Court's orders, Plaintiff's submission shall address the nearly two-month delay between the end of his period of homelessness and the filing of his instant request for an extension of time." (*Id.*)

While the Court awaited Schuster's response, Charter filed a letter responding to Schuster's November 29, 2018 letter "to correct the false, scandalous allegations" made by Schuster. (Doc. No. 35 at 1.) Charter's counsel, Kenneth Margolis, categorically denied Schuster's allegations that Margolis and Rivera were friends and that Margolis was being interviewed by Rivera's girlfriend. (*Id.*) Margolis wrote that he had "never met Mr. Rivera before the initial scheduling

conference in this matter," that he had met Rivera a total of four times (all for this matter), and that he "ha[d] no social or personal relationship whatsoever[] with Mr. Rivera." (*Id.*) In the letter, Margolis reminded the Court that Schuster had twice before made complaints regarding Charter's counsel's alleged misconduct – first with the New York Supreme Court and later with the New York Disciplinary Committee of the Appellate Division, First Department – both of which were dismissed. (*Id.* at 2.)

On December 10, 2018, Schuster filed his letter response to Charter's request for sanctions, although he spent the majority of that submission responding to Charter's December 4, 2018 letter. (*See* Doc. No. 38.) Schuster first doubled-down on his allegations of a personal relationship between his former counsel and Charter's counsel. (*Id.* at 1.) Schuster then opposed Charter's request for sanctions on the grounds that he had not been given sufficient notice of the August 30 deposition, claiming that, "[h]ad [he] known for a week or a few days, the time of the deposition, [he] would have been able to attend." (*Id.*) Furthermore, Schuster alleged that his former counsel had been aware of his inability to attend the deposition but had failed to communicate that fact to Charter's counsel, instead "show[ing] up to the deposition under the false pretense that he wasn't aware that [Schuster] couldn't make it." (*Id.* at 2.) Additionally, Schuster informed the Court that, throughout the litigation, he had no income and had unstable housing. (*Id.* at 1.) Notably, Schuster did not address his failure to appear at the September 12, 2018 conference or his delay in filing his request for an extension – as instructed in the Court's November 30, 2018 order.

On December 11, 2018, The Harman Firm, through Edgar Rivera, submitted a letter denying Schuster's allegations of professional misconduct. (*See* Doc. No. 37.) Rivera's letter explained that Schuster was aware of the date and time of his August 30, 2018 deposition since at least August 22, 2018, and Rivera attached an email confirmation that was sent to Schuster's email

address on August 22.  (*Id.* at 1 (citing Ex. A at 2).)  Rivera also explained that he and an associate

from his firm reminded Schuster of the time and told him the location of the deposition on August

28 when they met with Schuster for over an hour to prepare him for the deposition.  (*Id.*)

Additionally, Rivera asserted that no one at his firm was aware of Schuster's homelessness until

reading Schuster's November 29, 2018 letter to the Court, noting that he "ha[d] represented many

people with instable housing in the past and [had never] had to withdraw their representation."

(*Id.*)  Finally, Rivera categorically denied having any personal relationship with Charter's counsel,

explaining that his girlfriend was an attorney, not a writer, and that she was "not writing about

[Charter's] counsel."  (*Id.*)

On December 20, 2018, Schuster submitted yet another letter to the Court, in which he

responded to his former counsel's December 11 letter.  (*See* Doc. No. 42.)  In the letter, Schuster

tripled-down on his allegations that Rivera and Margolis had a personal relationship and that

Schuster had received inadequate notice of the August 30 deposition.  (*Id.* at 1.)  As in his prior

letters, Schuster reasserted his claims against Charter before calling for Charter's counsel to be

disqualified.  (*Id.* at 2–3.)

Charter responded to Schuster's submissions on December 21, 2018, arguing that Schuster

failed both to (i) show cause why he should not be sanctioned and (ii) address the delay between

the end of his alleged homelessness and his request for extension, as ordered by the Court.  (Doc.

No. 43 at 1.)  Charter pointed out that Schuster's claim of inadequate notice was unsupportable

considering the sworn statements and documentation demonstrating that Schuster was aware of

his deposition for more than a week.  (*Id.* at 1–2.)

Three months later, on March 21, 2019, Schuster sent a letter to the Court that largely

restated the allegations underlying his claims against Charter, before asking this Court to grant him

"the total amount asked in my lawsuit."  (Doc. No. 44 at 2–7.)  Charter responded on March 27,

2019, noting that Schuster's latest "unsolicited" letter was unresponsive to the Court's prior orders,

and renewing its request for sanctions.  (Doc. No. 45 at 1–2.)

Schuster corresponded with the Court twice more, through an April 4, 2019 letter and an

April 12, 2019 letter.  (*See* Doc. Nos. 46–47.)  In the April 4 letter, Schuster again restated his

allegations regarding the personal relationship between his former counsel and Charter's counsel

and reiterated certain facts underlying his claims against Charter.  (Doc. No. 46 at 1–4.)  In his

April 12 letter, however, Schuster appeared to allege (for the first time) that he had not received

certain Court orders because they were placed in the wrong mailbox.  (Doc. No. 47 at 1.)  He

attached a sworn letter from Rodney Billings, with whom Schuster had been living since the

previous fall, which stated that, on some occasions, mail intended for Billings's apartment was

placed in a separate, unclaimed mailbox.  (*Id.* at 2.)  In particular, Billings asserted that he found

an unidentified court document addressed to Schuster that was postmarked December 2018.  (*Id.*)

On April 23, 2019, the Court issued an order that both denied Schuster's request to

disqualify Charter's counsel and deemed Charter's "request for sanctions fully submitted."  (Doc.

No. 48 at 1.)

## II.  Discussion

### A.    Rule 37 Dismissal

Charter seeks dismissal of Schuster's case with prejudice as a sanction for his failure to

attend his deposition and the Court's September 12, 2018 conference, and for his continued

vexatious behavior following Charter's request for sanctions.  (Charter Br. at 11–12.)

Under Federal Rule of Civil Procedure 37(d)(1)(A)(i), a district court may impose

sanctions against a party who "fails, after being served with proper notice, to appear for that

person's deposition."  To sanction such conduct, a court may, among other things, "dismiss[] the action or proceeding in whole or in part" or "render[] a default judgment against the disobedient party."  Fed. R. Civ. P. 37(b)(2)(v)–(vi).  Rule 37 sanctions improve the function of the legal process by "ensur[ing] that the parties comply with court orders in the particular case," "serv[ing] as a specific deterrent by penalizing those whose conduct warrants sanction," and "provid[ing] a general deterrent effect."  *Quiles v. Beth Israel Med. Ctr.*, 168 F.R.D. 15, 18 (S.D.N.Y. 1996) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976); *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988); *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979)).

Under Rule 37, "a district court has wide discretion in sanctioning a party for discovery abuses."  *Reilly v. NatWest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999).  Furthermore, when sanctioning deliberate and persistent noncompliance, a district court is "not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record."  *S. New England Tel. Co. v. Glob. NAPs Inc*., 624 F.3d 123, 148 (2d Cir. 2010). In exercising their discretion under Rule 37, courts in the Second Circuit consider "'(1) the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the[] noncompliance; and (4) whether the non-compliant party had been warned' that noncompliance would be sanctioned."  *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 451 (2d Cir. 2013) (quoting *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009)).  If warranted, "[t]he severe sanction of dismissal with prejudice may be imposed even against a plaintiff who is proceeding *pro se*, so long as a warning has been given that noncompliance can result in dismissal." *Valentine v. Museum of Mod. Art*, 29 F.3d 47, 50 (2d Cir. 1994).

### 1.     Willfulness of Schuster's Behavior

"The criteria of willfulness and bad faith imply a deliberate disregard of the lawful orders of the court." *Quiles*, 168 F.R.D. at 18–19 (internal quotation marks omitted).  A plaintiff's "persistent refusal to comply with a discovery order presents sufficient evidence of willfulness, bad faith or fault." *Nieves v. City of New York*, 208 F.R.D. 531, 536 (S.D.N.Y. 2002) (internal quotation marks omitted).  Here, the record clearly reflects that Schuster's violations of his discovery obligations and his failure to comply with numerous court orders were willful.

First, in his letter seeking an extension to respond to Charter's request for sanctions, Schuster blamed his failure to attend both the August 30 deposition and the September 12 conference on his homelessness at the time.  (Doc. No. 31 at 1.)  But as Schuster's former counsel explained in his letter to the Court, Schuster failed to communicate his homelessness to his counsel at any point during the representation.  (Doc. No. 37 at 1.)  Indeed, while Schuster claimed that he told his former counsel that he needed more advance warning of the August 30 deposition "because he was homeless" (Doc. No. 34 at 1), this contention is belied by the August 29, 2018 email exchange between Schuster and his former counsel, in which Schuster never indicated that he was homeless, (Doc. No. 37, Ex. D).  Moreover, Schuster's former counsel represented that he personally reminded Schuster of the time and place of the deposition on August 28, after previously advising him of the date and time of the deposition in an August 22 email.  (*Id.* at 1, Ex. A.)  Thus, Schuster's failure to attend his deposition and the Court's conference could have been avoided if he had simply relayed his housing situation to his counsel, or if he had heeded his counsel's earlier communications regarding the time and place of the deposition.  His failure to do so, coupled with his continuous denial of any responsibility for his noncompliance with his discovery obligations (and obligations to the Court as a litigant), suggests that his behavior was willful.  As Schuster's

counsel explained in his letter to the Court, he "ha[d] represented many people with instable housing in the past," but he had never "had to withdraw [from] their representation," as was necessary here. (*Id.* at 1.)

But even putting aside Schuster's initial noncompliance in failing to attend his deposition or appear at the Court's September 12, 2018 conference, Schuster's behavior *after* those events independently supports a finding of willfulness on the part of Schuster. In the Court's November 30, 2018 order – after learning of Schuster's apparent period of homelessness – the Court granted Schuster's request for an extension of time but directed him to explain why it took him over two months after the end of his homelessness to contact the Court. (Doc. No. 36 at 1.) In his subsequent submissions, Schuster has never responded to that aspect of the Court's order. Instead, Schuster has used the Court's extension as an excuse to launch a bevy of misconduct claims against his former counsel and Charter's counsel, including the unsupported allegation that Rivera and Margolis shared some sort of personal relationship – which both lawyers vehemently denied under penalty of perjury. (*See* Doc. No. 35 at 1; Doc. No. 37 at 1.) Schuster's persistent misrepresentations and continued failure to respond to the Court's orders – despite the many opportunities he was given to correct the record – clearly support the inference that Schuster's conduct was done willfully and in bad faith, making dismissal appropriate. *See S. New England Tel. Co.*, 624 F.3d at 148.

### 2.   Efficacy of Lesser Sanctions

As noted above, Schuster was provided with ample notice of the potential sanctions at issue here. For example, the Court's Show Cause Order explicitly warned Schuster that the Court might impose monetary sanctions, dismissal, and a filing injunction against Schuster if he failed to comply. (Doc. No. 25 at 2.) Additionally, Charter repeatedly requested these sanctions throughout

its submissions.  (*See, e.g.*, Doc. Nos. 33, 35, 38, 43, 45.)  Despite this clear and consistent notice, Schuster has entirely failed to explain his delay in responding to Charter's request for sanctions and has continued to place the blame on his former counsel for his failure to appear at his deposition and at the Court's conference.  Simply put, the Court has given Schuster every opportunity to explain his conduct and comply with the Court's orders, but Schuster has continually refused to do so.  His persistently vexatious behavior, coupled with his constant stream of baseless allegations against his former counsel and Charter's counsel, indicates that lesser sanctions would be ineffective to curb his conduct.  Faced with this "deliberate and persistent noncompliance," the Court concludes that dismissal is an appropriate and necessary sanction. *Embuscado v. DC Comics*, 347 F. App'x 700, 701 (2d Cir. 2009).

### 3. Duration of Noncompliance

More than seven months elapsed between Schuster's initial failure to attend his deposition on August 30, 2018 and his most recent substantive letter to the Court on April 12, 2019.  During that time, Schuster repeatedly denied any responsibility for failing to attend either his deposition or the Court's September 12, 2018 conference.  But, as noted above, it is Schuster's behavior since those initial instances of noncompliance that is most troubling.  Indeed, Schuster has given no indication that he intends to comply with his discovery obligations or the Court's orders.  Instead, he has raised a stream of escalating allegations against his counsel and Charter's counsel that appear to lack any basis in fact.  When confronted with evidence refuting his claims – such as the fact that he never communicated his homelessness to his counsel and was notified of his deposition well in advance – Schuster has simply dissembled rather than admit any mistake or claim confusion.  The Second Circuit has regularly upheld the imposition of dispositive sanctions when a party's dilatory tactics have persisted for several months.  *See, e.g.*, *Ruza v. Rubenstein & Sendy*

*Att'ys at Law*, 520 F.3d 176, 177 (2d Cir. 2008) (seven months); *Phelan v. Campbell*, 507 F. App'x 14, 16 (2d Cir. 2013) (seven months); *Agiwal*, 555 F.3d at 303 (six months); *Embuscado*, 347 F. App'x at 701 (three months).  Schuster's nearly seven and a half months of such behavior therefore weigh strongly in favor of the dismissal of his case.

### 4.    Adequate Warning of Possible Sanctions

As previously discussed, Schuster was provided with clear notice of the potential sanctions imposed here through the explicit text of the Court's Show Cause Order and Charter's submissions seeking such relief.  Notably, even though Schuster claims that he was unable to receive some of the Court's orders by mail – due to the apparent mailbox mix-up at Rodney Billings's apartment – Schuster has never denied receiving those orders by email.[4]  Moreover, to the extent that Schuster was unable to receive any of the Court's orders by mail, Schuster's many submissions since the Show Cause Order undermine the notion that he lacked notice of potential sanctions.  For example, in his November 19, 2018 letter requesting an extension, Schuster specifically referenced the Court's "order to show cause that [he] not be subject to sanctions." (Doc. No. 31 at 1.)  Similarly, Schuster's November 29, 2018 and December 10, 2018 letters responded to Charter's November 21, 2018 and December 4, 2018 letters, which directly referenced the Court's Show Cause Order. (*See* Doc. No. 33 at 3; Doc. No. 34 at 1; Doc. No. 35 at 2; Doc. No. 38 at 1.)  Accordingly, there can be no doubt that the Court provided Schuster with ample notice that his case might be dismissed if he could not satisfactorily explain his noncompliant conduct.  Notwithstanding that notice, Schuster persisted in his noncompliance.

---

[4] In his April 4, 2019 letter to the Court, Schuster provided a new email address because he "recently had an attempted hack of [his] email," but he did not claim that this attempted hack affected his ability to receive any of the Court's prior orders or correspondence from his former counsel or from Charter.  (Doc. No. 46 at 4.)

### 5.      Dismissal with Prejudice Is an Appropriate Sanction

After carefully considering each of the factors relevant to determining which sanctions are appropriate under Rule 37, the Court concludes that Schuster's case should be dismissed with prejudice.  While Schuster is now proceeding pro se, a litigant's pro se status does not relieve him of his discovery obligations or his obligation to comply with court orders.  *See Baba v. Japan Travel Bureau Int'l, Inc.*, 111 F.3d 2, 5 (2d Cir. 1997); *Minotti v. Lensink*, 895 F.2d 100, 103 (2d Cir. 1990).  Schuster not only failed to appear for his deposition despite adequate notice of the time and place of that deposition; he also violated several of the Court's orders in failing to attend the September 12, 2018 conference and in refusing to provide any explanation for his delay in responding to the Court's Show Cause Order.  Given the willfulness of Schuster's behavior, the persistence of his noncompliance, and the repeated warnings he received from the Court, dismissal of Schuster's complaint with prejudice is warranted.

### B.      Rule 37 Monetary Sanctions

Charter also seeks monetary sanctions covering (i) the fees of the court reporter and videographer Charter retained to transcribe the deposition (totaling $569.50); (ii) Charter's attorney's fees incurred in connection with preparing for the August 30, 2018 deposition (totaling $21,853.95); and (iii) Charter's attorney's fees incurred in attending the deposition and September 12, 2018 conference at which Schuster failed to appear (totaling $1,846.75).  (Margolis Decl. ¶¶ 10–12.)

Under Rule 37, if a court imposes sanctions for a party's failure to attend that party's deposition, "the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R.

17

Civ. P. 37(d)(3).  Nevertheless, Courts in this Circuit have regularly found the imposition of Rule 37 monetary sanctions to be unwarranted where the noncompliant party is proceeding pro se or in forma pauperis.  *See, e.g.*, *Davis v. Stop & Shop Supermarket*, No. 18-cv-1279 (KAD), 2019 WL 5696019, at *3 (D. Conn. Nov. 4, 2019) (declining to impose monetary sanctions because of the plaintiff's pro se status); *Benitez v. King*, 298 F. Supp. 3d 530, 542 (W.D.N.Y. 2018) (collecting cases declining to impose monetary sanctions on plaintiffs proceeding in forma pauperis under Rule 11 and Rule 37); *Baez v. Kennedy Child Study Ctr.*, No. 11-cv-7635 (JMF), 2013 WL 705913, at *2 (S.D.N.Y. Feb. 27, 2013) (dismissing complaint pursuant to Rule 37 but declining to impose monetary sanctions in light of the plaintiff's pro se and in forma pauperis status); *Quiles*, 168 F.R.D. at 19 (declining to award monetary sanctions against pro se plaintiff who repeatedly ignored orders, but dismissing the case as a sanction).

Here, Schuster was represented at the time of his deposition and has not at any point in this litigation proceeded in forma pauperis.  Yet, in the time since the Court granted The Harman Firm's motion to withdraw as Schuster's counsel, Schuster has informed the Court that he was homeless during the period of time spanning his deposition and the September 12, 2018 conference, and that he has continued to experience both financial and housing instability throughout this litigation. (*See* Doc. Nos. 31, 38, 46.)  Given Schuster's apparent financial instability (despite the fact that he has never formally requested in forma pauperis status) and the likelihood that he would be unable to pay such sanctions in any event, the Court concludes that monetary sanctions pursuant to Rule 37 are not appropriate in this case.  *See Benitez*, 298 F. Supp. 3d at 542 (citing the fact that sanctions would be "ineffective" in light of the plaintiff's in forma pauperis status as a reason for declining to impose attorney's fees); *see also Baez*, 2013 WL 705913, at *2 (declining to impose monetary sanctions on the plaintiff where the defendant conceded that such sanctions would be

"meaningless").  Limiting Rule 37 sanctions to the dismissal of Schuster's complaint is also appropriate in light of Charter's representations at the September 12, 2018 conference that Charter "would be satisfied if the action were dismissed with prejudice" when the Court inquired whether Charter would pursue monetary sanctions.  (Conf. Tr. at 8–9.)[5]

## C.    Filing Injunction

Finally, Charter seeks a filing injunction to prevent Schuster from bringing additional claims based on his employment with Charter.  Beyond the sanctioning powers provided by Rule 37, federal courts have "the inherent power to impose sanctions for the bad-faith conduct" of a litigant.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991).  This inherent power is available in tandem to a court's Rule 37 sanctioning authority.  *See id* at 50 (explaining that courts are not "forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under [] statute or the [Federal Rules of Civil Procedure]").

When sanctioning a litigant's wholesale abuse of the judicial process, restricting that litigant's access to courts may be an appropriate measure.  *See Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 713–14 (2d Cir. 2019) (citing *Safir v. U.S.  Lines, Inc*., 792 F.2d 19, 24 (2d Cir. 1986)).  Accordingly, a filing injunction is an available measure to combat the "filing of repetitive and frivolous suits."  *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996) (citing *In re Martin-Trigona*, 9 F.3d 226, 227–28 (2d Cir. 1993)).  In evaluating whether to impose such a filing injunction, courts in this Circuit consider five factors:

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation,

---

[5] Charter only explicitly invokes Rule 37 as a basis for imposing monetary sanctions (Charter Br. at 4), but the Court also declines to award Charter attorney's fees or impose other monetary sanctions pursuant to its inherent authority, in light of the filing injunction imposed below.  That injunction "will serve as both the greater remedy for [Charter's] harm, and the greater deterrence against [Schuster's] abuse of the judicial process," making additional monetary sanctions unwarranted here.  *Ex'r of the N.Y. Estate of Kates v. Pressley & Pressley, P.A.*, 11-cv-3221 (JFB), 2013 WL 495415, at *9 (E.D.N.Y. Feb. 7, 2013).

e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 528 (2d Cir. 2005) (quoting *Safir*, 792 F.2d at 24). The Court finds that each of these factors weighs in favor of imposing a filing injunction against Schuster for all claims based on (i) the facts alleged in his complaint or (ii) the alleged misconduct of Charter's counsel throughout Schuster's various litigation proceedings.

### 1.      Schuster's History of Vexatious Litigation

As Charter points out in its memorandum of law in support of sanctions, Schuster's "repetitive and duplicative attacks against Charter and its counsel have spanned nearly two years" and have all failed in their respective fora. (Charter Br. at 7–9.) What's more, during the course of the present litigation, Schuster took advantage of the Court's November 30, 2018 order granting him an extension to show cause against sanctions by bringing a host of baseless accusations against his former counsel and Charter's counsel. (*See, e.g.*, Doc. Nos. 38, 42, 44, 46, 47.) Such allegations, in conjunction with Schuster's previous claims against Charter and its counsel, reveal a consistent pattern of "vexatious, harassing [and] duplicative lawsuits." *Safir*, 792 F.2d at 24. Without a filing injunction, there is nothing to suggest that Schuster will be discouraged from continuing with his tactics in the future.

### 2.      Schuster's Motive

The Court agrees with Charter that "the only reasonable inference to be drawn from Schuster's conduct is that his motive is not to assert legitimate, good faith claims but merely to burden and harass Charter, perhaps with the aim of exacting an unwarranted monetary settlement." (Charter Br. at 12.) Schuster's failure to attend his deposition after receiving preparation and

adequate notice of the time and place of the deposition – which essentially ground this case to a halt – should alone indicate that he did not intend to assert his claim in good faith. But this conclusion is further supported by Schuster's failure to comply with the Court's orders while simultaneously asserting baseless accusations against his former counsel and Charter's counsel.

### 3.    Schuster's Pro Se Status

Since the Court granted The Harman Firm's motion to withdraw on September 17, 2018, (Doc. No. 25), Schuster has proceeded in this action pro se. However, Schuster's counsel withdrew because of Schuster's continual non-cooperation, which made prosecution of the case impossible. (*See* Doc. No. 17.) And "while pro se litigants may in general deserve more lenient treatment than those represented by counsel, all litigants, including pro ses, have an obligation to comply with court orders." *McDonald v. Head Crim. Ct. Supervisor Officers*, 850 F.2d 121, 124 (2d Cir. 1988). Moreover, Schuster's persistent noncompliance was not due to any lack of sophistication or ignorance of his discovery obligations; rather, it was only due to Schuster's willful disregard of the advice of his counsel, communications from Charter's counsel, and the Court's orders. Under the circumstances, Schuster's pro se status does not bar the imposition of a filing injunction. *See, e.g.*, *Washington v. William Morris Endeavor Ent., LLC*, No. 10-cv-9647 (PKC), 2014 WL 4401291, at *12 (S.D.N.Y. Sept. 5, 2014) (imposing a filing injunction on a pro se plaintiff and noting that "a court's special solicitude toward pro se litigants does not extend to the willful, obstinate refusal to play by the basic rules of the system upon whose very power the plaintiff is calling to vindicate his rights" (internal quotation marks omitted)).

### 4.    Needless Expense

The legal expenses incurred in connection with the August 30, 2018 deposition and the September 12, 2018 conference were entirely needless, as Schuster both failed to attend or offer a

persuasive justification for his absence.  While Schuster claimed that the stress caused by his homelessness led to his non-appearance, the Court is not obliged to accept his explanation at face value, particularly since Schuster's noncompliance with court orders persisted long after his period of homelessness ended.  (*See* Doc. No. 36 at 1.)  Furthermore, Schuster has burdened Charter's counsel, his own (former) counsel, and the Court with his stream of baseless accusations since the Court granted his extension to show cause why he should not be sanctioned.

### 5.        Efficacy of Other Sanctions

Lastly, Schuster's continual behavior in this case demonstrates that sanctions other than a filing injunction would not be "adequate to protect the courts and other parties." *Safir*, 792 F.2d at 24.  The Court has issued four orders that Schuster has either failed to comply with or has used as an opportunity to assert serious, demonstrably false allegations against his former counsel and Charter's counsel.  (*See* Doc. No. 18; Doc. No. 24; Show Cause Order; Doc. No. 36.)  Schuster has not given the Court any reason to believe that he will suddenly become a model litigant after failing to do so for over seven months (or more than two years, if his previous complaints are taken into account), despite clear notice that his lawsuit might be dismissed and that a filing injunction might be imposed against him.  Accordingly, the Court concludes that Charter's requested filing injunction is necessary, as any lesser sanctions appear unlikely to dissuade Schuster from continuing with his vexatious behavior.

### 6.        Scope of the Filing Injunction

Even where a district court concludes that a filing injunction is warranted, the Second Circuit has instructed that "such injunctions must be appropriately narrow." *Bd. of Managers of 2900 Ocean Ave. Condo. v. Bronkovic*, 83 F.3d 44, 45 (2d Cir. 1996); *see also Safir*, 792 F.2d at

25 (concluding that an injunction precluding the plaintiff "from instituting any action whatsoever" was "overly broad," such that it might "foreclose what might be a meritorious claim").

Here, Charter seeks a filing injunction "requiring [Schuster] to obtain leave of Court before filing any action, motion, petition, complaint or request for relief with any administrative agency or Court concerning (1) his employment with Charter; (2) his pursuit of any remedies from Charter; and (3) Charter's defense of [Schuster's] claims (including any allegations of professional misconduct)." (Charter Br. at 11.)  The Court concludes that Charter's proposed filing injunction is – for the most part – reasonably tailored to address Schuster's history of vexatious claims. Charter does not seek a wholesale bar on Schuster's ability to institute any action – the type of injunction that was rejected as unduly broad in *Safir*, *see* 792 F.2d at 25.  Rather, Charter's proposed injunction properly captures the main focus of Schuster's complaints against Charter and its counsel since 2016 – complaints that Schuster's past practice suggests will continue unabated without a filing injunction in place.  And to the extent that Schuster seeks to raise any new or meritorious claims against Charter or its counsel in the future based on the facts alleged in his complaint, he may obtain leave of this Court to do so.

The Second Circuit has cautioned, however, that "principles of federalism and comity counsel against the 'blanket extension' of filing injunctions to proceedings in state court." *Vassel v. Firstorm Props. 2 LLC*, 750 F. App'x 50, 53 (2d Cir. 2018) (quoting *In re Martin-Trigona*, 737 F.2d 1254, 1263 (2d Cir. 1984)); *see also Lipin v. Sawyer*, 395 F. App'x 800, 801–02 (2d Cir. 2010).  This is because "[a]buse of state judicial processes is not *per se* a threat to the jurisdiction of Article III courts and does not *per se* implicate other federal interests." *Martin-Trigona*, 737 F.2d at 1263.  Nevertheless, *Martin-Trigona* made clear that filing injunctions *may* prohibit a

litigant from "bringing new actions in any tribunal . . . against persons who have encountered him in any capacity" throughout his *federal* court proceedings. *Id.*

In line with this guidance, the Court will therefore limit the scope of Schuster's filing injunction to any filings in any tribunal relating to or arising from (i) the cable box incident alleged in Schuster's complaint, as well as Charter's alleged response to that incident or Schuster's OSHA claims; or (ii) any of Charter's conduct in defending against Schuster's previous actions – so long as such filings include allegations against any person or entity that encountered Schuster in any capacity throughout this federal litigation (including Charter and Charter's counsel).

## IV.  Conclusion

For the reasons stated above, Charter's motion for sanctions is GRANTED IN PART and DENIED IN PART, and Schuster's complaint is DISMISSED with prejudice.

Additionally, from the date of this Opinion and Order, Schuster is barred from filing in any tribunal any action, motion, petition, complaint, or request for relief that relates to or arises from (i) the cable box incident alleged in Schuster's complaint, as well as Charter's alleged response to that incident or Schuster's OSHA claims; or (ii) any of Charter's conduct in defending against his previous actions – against any person or entity that encountered Schuster throughout this federal litigation – without first obtaining leave from this Court.  Any motion for leave must include the caption "Request for Permission to File under Filing Injunction" and must be submitted to the Pro Se Intake Unit of this Court along with Schuster's proposed filings.  If Schuster violates this Opinion and Order and files any materials without first obtaining leave to file, any request will be denied for failure to comply with this Opinion and Order, and Schuster may be subject to sanctions, including monetary penalties or contempt.  *See, e.g.*, *Ranasinghe v. Kennell*, No. 16-cv-2170 (JMF), 2017 U.S. Dist. LEXIS 10512, at *17 (S.D.N.Y. Jan. 24, 2017).

The Court clarifies that this filing injunction does not prevent Schuster from appealing from this Opinion and Order, but the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any such appeal would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to send a copy of this order to Schuster via email at the updated email address listed on the electronic case docket and via mail at Schuster's new mailing address (which was updated per a Pro Se Memorandum on August 9, 2020, Doc. No. 49), and to close the case.

SO ORDERED.

Dated:     April 8, 2021
           New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation