UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AKOBI SCHUSTER,

                              Plaintiff,

             -v-

CHARTER COMMUNICATIONS, INC.

                              Defendant.

---

No. 18-cv-1826 (RJS)
<u>ORDER</u>

<u>RICHARD J. SULLIVAN</u>, Circuit Judge:

On May 13, 2022, Defendant Charter Communications, Inc. ("Charter") notified the Court that Plaintiff Akobi Schuster had "filed a complaint against Charter . . . in the Supreme Court of New York, New York County on March 10, 2022."  (Doc. No. 60 at 4); *see* Complaint, *Schuster v. Charter Commc'ns, Inc.* (*Schuster II*), No. 22-cv-2778 (JPO) (S.D.N.Y. Apr. 4, 2022), ECF No. 1-1, *removed from* No. 100297/2022 (Sup. Ct. N.Y. Cnty. Mar. 10, 2022).  Charter asserted that Schuster's filing of the *Schuster II* complaint constituted a "blatant violation of this Court's filing injunction" (Doc. No. 60 at 4), under which "Schuster is barred from filing in any tribunal any action, motion, petition, complaint, or request for relief that relates to or arises from (i) the cable box incident alleged in Schuster's complaint, as well as Charter's alleged response to that incident or Schuster's OSHA claims; or (ii) any of Charter's conduct in defending against his previous actions – against any person or entity that encountered Schuster throughout this federal litigation – without first obtaining leave from this Court" (Doc. No. 50 at 24).  Consequently, the Court ordered Schuster on June 27, 2022 "to show cause . . . why his filing of the complaint in *Schuster II* does not constitute a violation of the filing injunction imposed by the Court on April 8, 2021."  (Doc. No. 66 at 7.)

The Court is now in receipt of Schuster's show-cause letter of July 15, 2022 (Doc. No. 67); Charter's July 29, 2022 response to that letter (Doc. No. 68), in which "Charter also request[ed] that the Court impose monetary sanctions to compensate Charter for having to respond to Mr. Schuster's continued harassment" (*id.* at 3); and Schuster's July 29, 2022 letter opposing the imposition of monetary or contempt sanctions at this time (Doc. No. 69).  For the reasons stated below, the Court finds that Schuster's filing of the *Schuster II* complaint indeed violated the Court's filing injunction and that Schuster has failed to show cause why sanctions should not be imposed.

In his show-cause letter, Schuster first argues that "[t]he *Schuster II* filing is not a violation of the filing injunction because it is not an address of the cable box incident, it is not an address to Charter's response to that incident, [and] it is not an address of OSHA claims." (Doc. No. 67 at 5.) These assertions are demonstrably false.  Nearly every factual allegation contained in the *Schuster II* complaint clearly *is* addressed to either the cable box incident, *see* Complaint, *Schuster II*, No. 22-cv-2778 (JPO), ECF 1-1 at 4 ¶¶ 4–8, 18 ¶¶ 82–83; 19–20 ¶¶ 86, 90–93; the aftermath of the cable box incident (including Schuster's alleged medical complications from, and Charter's response to, the incident), *see id.* at 4–8 ¶¶ 8–30; 9–11 ¶¶ 34–44; 15–16 ¶¶ 67–71; the OSHA safety complaint, worker's compensation claim, and retaliation claim that Schuster filed relating to the cable box incident, *see id.* at 9 ¶¶ 31–33; 11–14 ¶¶ 45–61; 18–22 ¶¶ 81–104; 27–28 ¶¶ 127; or the investigation into the cable box incident that the Department of Labor's Division of Wages and Hours conducted upon Schuster's request, *see id.* at 16–18 ¶¶ 72–80.  On their own terms, all of these allegations – which together account for 97 of the 128 paragraphs in the *Schuster II* complaint – clearly "relate[] to or arise[] from . . . the cable box incident alleged in Schuster's

complaint [in this case]," and therefore fall well within the scope of the filing injunction.  (Doc. No. 50 at 24.)

Nevertheless, Schuster argues in his show-cause letter that the *Schuster II* complaint "is not a violation of the filing injunction because" it also contains allegations relating to events that allegedly occurred "after [the Court's] April 8, 2021 decision [imposing the filing injunction]." (Doc. No. 67 at 5).  This argument – which appears to be referring to the portion of the *Schuster II* complaint pertaining to the email Schuster allegedly received on February 18, 2022 from Jonathan Diamond, Charter's Director of Human Resources, informing him that his employment at Charter had formally been terminated, *see* Complaint, *Schuster II*, No. 22-cv-2778 (JPO), ECF 1-1 at 22–27 ¶¶ 105–126 – fails twice over.  First, while Schuster asserts in his show-cause letter that the termination decision underlying Diamond's email was made on "October 22, 2021" (Doc. No. 67 at 4), that date appears nowhere in the *Schuster II* complaint, *cf. generally* Complaint, *Schuster II*, No. 22-cv-2778 (JPO), ECF 1-1.  Indeed, Schuster's assertion that he "had not been terminated . . . prior to October 22, 2021" (Doc. No. 67 at 5) is directly contradicted by his own complaint in this case, wherein he repeatedly alleged that Charter had already "terminat[ed] his employment" as of "February 28, 2018" (Doc. No. 1 at 1 ¶ 1; 18 ¶ 148; 19 ¶ 155; 21 ¶ 178; 22).  Moreover, the Court agrees with Charter that "Schuster's termination" – whether he alleges it to have occurred sometime prior to February 2018 or on October 22, 2021 – "indisputably 'relates to and arises from' the cable box incident and Charter's response to the incident."  (Doc. No. 68 at 3 (quoting Doc. No. 50 at 24) (alterations omitted in Charter letter).)  Indeed, Schuster's own theory of this case has always been that "Charter . . . discriminat[ed] against him based on [his] disability" – specifically, his alleged "physical symptoms [and] mental symptoms that developed" after "the cable box malfunctioned" – "by . . . terminating his employment."  (Doc. No 1 at 1 ¶ 1; 16 ¶¶ 132,

134; *see also id.* at 16 ¶ 133 ("Because of Charter's discriminatory response to Mr. Schuster's injuries [from the cable box incident], he has been unpaid since March 2017.").)

Accordingly, the *Schuster II* complaint plainly constitutes a "complaint . . . that relates to or arises from . . . the cable box incident alleged in Schuster's complaint [in this case]." (Doc. No. 50 at 24.) When he filed the *Schuster II* complaint in New York Supreme Court, Schuster had been provided with ample notice that he was not permitted to file "any" such complaint "in any tribunal . . . without first obtaining leave from this Court." (*Id.*) He does not now dispute Charter's allegation that he filed the *Schuster II* complaint "without first obtaining leave from this Court" – nor could he possibly dispute that allegation, as the record contains no indication that Schuster ever asked this Court's leave to file the *Schuster II* complaint. (Doc. No. 60 at 4.) The Court therefore finds that Schuster violated the filing injunction by filing the *Schuster II* complaint, and that he has failed to show cause to the contrary. (*Cf. generally* Doc. No. 67.) Having so found, the Court will now turn to the matter of appropriate sanctions.

First, the Court has explicitly warned Schuster on two occasions that his violating the filing injunction could result in "the Court's summary denial of all and any future requests he might make for permission under such filing injunction." (Doc. No. 66 at 7; *see also* Doc. No. 50 at 24). Accordingly, IT IS HEREBY ORDERED THAT Charter need not, and shall not, file a response to any request made by Schuster for permission under the filing injunction, unless specifically directed by the Court to do so.

Next, Charter requests "that the Court impose monetary sanctions to compensate Charter for having to respond to Mr. Schuster's continued harassment." (Doc. No. 68 at 3.) The last time the Court was squarely presented with a request to impose monetary sanctions, the Court noted that Schuster "ha[d] informed the Court that he was homeless [for a] period of time" during the

4

pendency of this litigation and "has continued to experience both financial and housing instability throughout this litigation." (Doc. No. 50 at 18 (citing Doc. Nos. 31, 38, 46).) "Given Schuster's apparent financial instability . . . and the likelihood that he would be unable to pay such sanctions in any event, the Court conclude[d] that monetary sanctions . . . [were] not appropriate in this case [at that time]." (*Id.*); *accord, e.g.*, *Benitez v. King*, 298 F. Supp. 3d 530, 542 (W.D.N.Y. 2018) ("Courts in this Circuit have frequently determined that a monetary sanction would be both ineffective and unreasonable in light of a litigant's status as a poor person.") (collecting cases). Because Charter has not offered any indication (let alone submitted any evidence) that Schuster's financial situation has changed since April of 2021, the Court sees no reason to diverge from that conclusion. Accordingly, Charter's request for the imposition of monetary sanctions is DENIED WITHOUT PREJUDICE to renewal. To the extent that Charter wishes to renew its request for monetary sanctions, any such request should be accompanied by evidence of Schuster's ability to pay and/or an explanation of why Schuster's "indigency" would not "render an award of attorney's fees and costs to [Charter] a hollow gesture." *Benitez*, 298 F. Supp. 3d at 542.

Finally, the Court notes the need to deter Schuster from two separate and ongoing forms of vexatious and harassing conduct directed at Charter – one being his pattern of filing repetitive, harassing, vexatious, and frivolous requests for permission under the filing injunction, the other being his apparent willingness to simply *violate* the filing injunction (as he did in filing the *Schuster II* complaint) by attempting to relitigate the cable box incident in other tribunals without first seeking leave of this Court. The foregoing modification of the filing injunction to relieve Charter of responding to Schuster's requests is intended to deter the former (and spare Charter the burden and expense associated with responding to such requests). There remains a need, however, to deter the latter. To that end, IT IS FURTHER ORDERED THAT Schuster shall voluntarily

dismiss with prejudice his complaint in *Schuster II*, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), within seven calendar days of the filing of this Order.  If Schuster does not comply with this "clear and unambiguous" order, *Southern New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 145 (2d Cir.2010) (citation omitted), he will be held in civil contempt of this Court and will be subject to arrest and detention by the United States Marshal "until he complies with [the Court's] order" to voluntarily dismiss the *Schuster II* action before Judge Oetken, *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994); *see also id.* (recognizing that "the paradigmatic coercive, civil contempt sanction . . . involves confining a contemnor indefinitely until he complies with an affirmative [court] order").

In threatening civil contempt sanctions, the Court clarifies that the purpose of such sanctions would be "remedial . . . , and not punitive." *Al Hirschfeld Found. v. Margo Feiden Galleries Ltd.*, 438 F. Supp. 3d 203, 207 (S.D.N.Y. 2020) (quoting *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5 (2d Cir. 1989)).  Indeed, it should be clear that Schuster "carries the keys of his prison in his own pocket," since he has the ability "to purge the contempt" and avoid detention "by committing [the] affirmative act" of withdrawing and voluntarily dismissing the *Schuster II* action.  *Bagwell*, 512 U.S. at 828.  Nevertheless, the Court also recognizes that such "coercive" forms of civil contempt sanctions are sometimes appropriate and necessary "to secure compliance with court orders."  *Al Hirschfeld Found.*, 438 F. Supp. 3d at 207 (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947); *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.*, 369 F.3d 645, 657–58 (2d Cir. 2004); *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1351 (2d Cir. 1989)).

In sum:  for the foregoing reasons, IT IS HEREBY ORDERED THAT (1) Charter is relieved of responding to any request from Schuster under the filing injunction unless specifically

directed by the Court to do so; (2) Charter's request to impose monetary sanctions on Schuster is DENIED WITHOUT PREJUDICE; and (3) Schuster shall voluntarily dismiss with prejudice his complaint in *Schuster II*, pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), within seven calendar days of the filing of this Order or else be held in civil contempt of this Court.

Lastly, the Court clarifies that the filing injunction imposed on April 8, 2021 (Doc. No. 50) does not prevent Schuster from appealing from this Order, but the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any such appeal would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is respectfully directed to send a copy of this Order to Schuster via email at the updated email address listed on the electronic case docket and via mail at the return address listed on his most recent pro se letters (30 W. 141st St., #16S, New York, NY 10037).  (*See* Doc. Nos. 61, 63, 65, 67, 69.)

SO ORDERED.

Dated:    August 3, 2022
          New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation